**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID R. BENZEL**, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:13-CV-00280 |
| | : | |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| **CHESAPEAKE** | : | |
| **EXPLORATION, L.L.C.**, *et al.*, | : | Magistrate Judge Deavers |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

## I.   INTRODUCTION

This matter is before the Court on the Motion of Plaintiffs David Benzel, Kenna Heath, Samuel Heath, Mary Ann Hill, Peter Kale, Nancy Kale, George Konikowski, Joseph R. Koslik, Cynthia Koslik, Angela Semple, Ryan Green, Florence Jean Strahl, Wells Township Sportsman Club, John Vendetta, Debra Vendetta, and Courtney Yanok for Summary Judgment (collectively, "Plaintiffs"), (Doc. 38), and the Cross-Motion of Defendants Chesapeake Exploration, L.L.C., ("Chesapeake") and Statoil USA Onshore Properties, Inc., ("Statoil") (collectively, the "Defendants") for Summary Judgment.  (Doc. 39).  Because all but one of the Plaintiffs were either dismissed as parties or settled with Defendants, the sole remaining plaintiff in this action is Wells Township Sportsman Club ("Wells"), an Ohio non-profit corporation. For the reasons stated herein, Plaintiffs' Motion is **DENIED** and Defendants' Motion is **GRANTED**.

## II.   BACKGROUND

### *A.  Factual Background*

This case arises from a dispute over oil and gas leases (the "Leases") that Plaintiffs, originally sixteen sets of land and mineral rights owners in Jefferson County and Belmont

County, Ohio, entered into between April 2007 and January 2008 with Great Lakes Energy Partners, LLC ("Great Lakes") or Range Resources-Appalachia, LLC ("Range"), the successor to Great Lakes. (Doc. 39 at 10-11). The Leases were prepared by Range. (Doc. 38 at 8).

All but one of the Plaintiffs were either dismissed or settled with Defendants. (Doc. 42, 43, 48, 50, 52-57). The sole remaining plaintiff is Wells Township Sportsman Club ("Wells" or "Plaintiff"), an Ohio non-profit corporation. Wells is, and was at all relevant times, the owner of approximately 164.156 acres of real property, and the oil and gas rights within and thereunder, in Jefferson County, Ohio. (*Complaint*, Doc. 5, ¶ 9; Doc. 39-2 at 33). Wells is party to a Lease originally signed in favor of lessee, Great Lakes, on or about September 1, 2007, encompassing the 164.156 acres of land in Jefferson County, Ohio. (Doc. 39 at 10).[1]

Each of the Leases included a "habendum clause," at Paragraph 2, which provided that each Lease would last for a term of five years (the "primary term"), and "so much longer thereafter as oil, gas and/or coalbed methane gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee," or as the premises are operated by Lessee in search for such oil, gas, or coalbed methane in a manner provided for in Paragraph 7. (Doc. 5 at ¶ 27; Doc. 39-1).

The dispute in this case centers on Paragraph 19, another provision contained in each of the Leases. Paragraph 19 states:

> In consideration of the acceptance of this lease by the Lessee, the Lessor agrees for himself and his heirs, successors and assigns, that no other lease for minerals covered by this lease shall be granted by the Lessor during the term of this lease or any extension or renewal thereof granted to the Lessee herein. Upon expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease.

(Doc. 39-1).

---
[1] References throughout the remainder of this opinion are to Wells, the sole remaining Plaintiff in this case.

On August 27, 2012, approximately 5 days prior to the expiration of the primary terms of the leases, Defendants executed and recorded a "Notice of Extension of Oil and Gas Lease" for each of the Leases in the Jefferson County Recorder's Office (the "Notices of Extension"). (Doc. 39-2).  With the Notices of Extension, Defendants purported to invoke Paragraph 19 and give "public notice" that each Lease was "effectively extended" under identical terms for an additional five-year period.  (Doc. 5, ¶ 30; *Answer*, Doc. 7, ¶¶ 17-19; Doc. 39-1).  Defendants did not negotiate with Plaintiffs the terms upon which the Leases would continue.  (Doc. 39 at 11-12).  At or near the time the Notices of Extension were filed, Defendants also tendered checks as bonus payments for each "extension" in amounts equal to the up-front bonus paid when each respective lease was signed. (*Id.*; Doc. 39-2).  Plaintiff did not cash its check.  (Doc. 5, ¶ 31).

### *B. Procedural Background*

On February 21, 2013, Plaintiff commenced this action in the Jefferson County Court of Common Pleas as a state action.  (Doc. 5).  Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants removed the matter to this Court on March 25, 2013.  (*Notice of Removal*, Doc. 1).  In the Complaint before the Court, Plaintiff seeks declaratory relief and an adjudication of its rights under the Lease.  (Doc. 5, ¶ 55-66).

Plaintiff alleges claims for ejectment (Count I), seeking to remove Defendants from its claimed lease interests; slander of title (Count II), arguing that Defendants' conduct represents willful and intentional action to deprive Plaintiff of its rights, which falsely and maliciously defames the properties of Plaintiff; and declaratory relief (Count III) requesting a declaration of the duties and obligations of the parties and that the lease be declared expired and/or null and void.  (Doc. 5, ¶¶ 55-66). In particular, Plaintiff alleges that any purported "option language" in Paragraph 19 of the Lease is invalid and that the Lease expires at the close of the five-year

3

primary term.  (*Id.*).  Plaintiff also demands compensatory damages in excess of $25,000.  (*Id.*).  A parallel case, brought in Belmont County, was filed on March 28, 2013 and also removed to this Court.  (*Batalo v. Chesapeake Exploration*, Case No. 2:13-cv-00296, Doc. 1).  On July 11, 2014 the Court ordered the two matters to be consolidated, and all pleadings and documents filed in this case.  (*Order*, Doc. 18).

On April 15, 2013, Defendants filed a combined Partial Answer, Affirmative Defenses, and Counterclaim to Complaint for Declaratory Judgment, and Other Relief, asserting a cause of action for Declaratory Judgment (Count I).  (Doc. 7).  Defendants' Counterclaim seeks, among other things, declarations that Paragraph 19 allows the Defendants to extend the terms of each of the Leases for an additional term and that the Defendants validly extended the Leases under the clauses contained in each agreement and/or under other common law bases.  (Doc. 7 at 9-11).  Also on April 15, 2013, Defendants filed a Motion to Dismiss Count II of the Complaint, (Doc. 8), which this Court denied on December 6, 2013.  (*Opinion and Order*, Doc. 37).   On May 1, 2013, Plaintiff filed an Answer to Defendants' Counterclaim.  (Doc. 10).

On January 13, 2014, Plaintiffs filed a Motion for Summary Judgment seeking adjudication of their claims.  (Doc. 38).  Defendants also filed a Motion for Summary Judgment on the same day seeking summary judgment in their favor on Plaintiffs' claims.  (Doc. 39).  The matter is fully briefed and is now ripe for this Court's review.[2]

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[2] Neither party has moved for summary judgment on Defendants' Counterclaim.  (*See* Pls.' Mot. Summ. J., Doc. 38 at 24 (requesting summary judgment on Plaintiffs' claims for declaratory relief); Defs.' Mot. Summ. J., Doc. 39 at 1 (moving for summary judgment "on the Plaintiffs' claims arising out of Chesapeake's extension of the primary term of their oil and gas lease")).

together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339-40 (6th Cir.1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). Summary judgment is inappropriate, however, "if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir.2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995). The standard of review for cross-motions for summary judgment "does not differ from the standard applied when a motion is filed by only one party to the litigation." *Sierra Brokerage Servs.*, 712 F.3d at 327.

5

In a contract dispute, summary judgment is appropriate when the contractual language is unambiguous, or, if the language is ambiguous, when extrinsic evidence leaves no genuine issue of material fact and permits interpretation of the agreement as a matter of law. *See Eastham v. Chesapeake Appalachia, LLC*, 2013 WL 5274576 at *2 (S.D. Ohio Sept. 18, 2013) *aff'd sub nom. Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356 (6th Cir.2014); *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. BVR Liquidating, Inc.,* 190 F.3d 768, 772 (6th Cir.1999). Stated otherwise, contract interpretation is turned over to the fact-finder only when the relevant contract language is ambiguous. *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir.1991) (applying Ohio law) (citing *Bahamas Agric. Indus., Ltd. v. Riley Stoker Corp.,* 526 F.2d 1174, 1179 (6th Cir.1975)). The Court decides whether a contract is ambiguous as a matter of law. *Id.* (citing *D.L. Baker & Co. v. Acosta,* 720 F.Supp. 615, 618 (N.D. Ohio 1989)).

## IV. ANALYSIS

The primary issue contested by the parties is the interpretation of Paragraph 19 of the Leases. Under Ohio law, which governs the matter before the Court, oil and gas leases are contracts subject to the well-settled rules of contract construction and interpretation. *See, e.g. Burtner-Morgan-Stephens Co. v. Wilson*, 586 N.E.2d 1062 (Ohio 1992); *Phillips Exploration, Inc. v. Reitz*, No. 2:11-cv-920, 2012 WL 6594915 (S.D. Ohio Dec. 18, 2012). Interpretation of a written contract is a matter of law for initial determination by the Court. *Construction Interior Sys., Inc. v. Marriott Family Rests., Inc.*, 984 F.2d 749, 754 (6th Cir.1993) (applying Ohio law).

When confronted with an issue of contract interpretation, the Court's role is to give effect to the parties' intent. *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (citing *Sunoco, Inc. (R&M) v. Toledo Edison Co.,* 953 N.E.2d 285, 292 (Ohio 2011)). To accomplish this, courts are tasked to examine the contract as a whole and presume that the

parties' intent is reflected in the contract's language. *Id.*; *see also Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 33-35 (Ohio 2007)(citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898 (Ohio 1999); *Kelly v.Med. Life Ins. Co.*, 509 N.E.2d 411 (Ohio 1987)). Thus, a court's construction should attempt to harmonize all provisions of the contract, and should not dismiss any provision as inconsistent if a reasonable interpretation exists that gives effect to both. *See Farmers' Nat'l Bank v. Delaware Ins. Co.*, 94 N.E. 834, 839 (Ohio 1911) ("The plain rule of construction requires that every provision of a contract shall be given effect if possible."); *Expanded Metal Fireproofing Co. v. Noel Const. Co.*, 101 N.E. 348, 350 (Ohio 1913) ("No provision of a contract is to be disregarded as inconsistent with other provisions, unless no other reasonable construction is possible. A special provision will be held to override a general provision only where the two cannot stand together.").

Additionally, courts should review the "plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent" from the agreement. *See Eastham*, 754 F.3d at 361. When the language of a written contract is clear, a court may look only to the writing itself to find the parties' intent. *Id.* Courts may examine extrinsic evidence to determine the intent of the parties only if the contract is ambiguous. *Shifrin v. Forest City Enters.,* 597 N.E.2d 499, 501 (Ohio 1992); *see also Cameron v. Hess Corp.*, 2:12-CV-00168, 2013 WL 6157999 at *4 (S.D. Ohio Nov. 25, 2013).

A contract is ambiguous when it cannot be given a "definite legal meaning." *Westfield Ins. Co. v. Galatis,* 797 N.E.2d 1256, 1261 (Ohio 2003). In other words, "[a]mbiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller–Gonzalez,* 896 N.E.2d 666, 669 (Ohio 2008); *see also* 11 Williston on Contracts § 30:5 (4th ed.). As the Ohio Supreme Court has warned, however, rules for construing ambiguous

7

language should be employed "only…when a definitive meaning proves elusive." *State v. Porterfield,* 829 N.E.2d 690, 692–93 (Ohio 2005). "Otherwise, allegations of ambiguity become self-fulfilling." *Id*. at 693; *see also Eastham*, 754 F.3d at 361.

### A. *Parties' Cross-Motions for Summary Judgment*

<u>1. Plaintiff's Interpretation of Paragraph 19 of the Leases</u>

Plaintiff's position is that Defendants did not have a unilateral option to extend the Leases because Paragraph 19 unambiguously requires parties to negotiate any extension or renewal of the Leases. (Doc. 38). Plaintiff sets forth a number of arguments they claim support its interpretation.

First, Plaintiff argues Paragraph 19 grants Defendants the option to enter into a "like lease" under "similar terms," but not the same lease under identical terms. (*Id*. at 11-12). Thus, Plaintiff insists that Defendants' respective extensions of the Leases under the identical terms of the original Leases are inoperative. (*Id*.). Further, according to Plaintiff, because the phrase "similar terms under a like lease" left terms deliberately uncertain, any additional agreement would require renegotiation to establish new terms in order for the agreement to be binding. (*Id*. at 21).

In support of its interpretation of Paragraph 19, Plaintiff dissects the structure of Paragraph 19's final sentence: "Upon the expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease." (*Id*. at 11). Plaintiff argues that "like lease" and "similar terms" modify both the verb "renew" and the verb "extend." (*Id*. at 13-15)

Plaintiff claims that, because the terms "extend" and "renew" are used interchangeably in the oil and gas industry and under Ohio law, the words have the same meaning within the context

of Paragraph 19 and should be read as only granting an option to renew. (*Id*. at 16-17). Plaintiff posits that even if the Court rejects the argument that "renew" and "extend" are used synonymously, expert testimony regarding trade custom and usage of the terms "extend" and "renew" in oil and gas leases establishes that the Paragraph 19 is ambiguous. (*Id*. at 16). Thus, according to Plaintiff, Paragraph 19 must be construed against the drafter, the Defendants' predecessor-in-interest, and in favor of the Plaintiff. (*Id*. at 24).

Plaintiff also argues that by providing an option to "extend or renew" a "like lease" under "similar terms" – and not the same lease under identical terms – the terms of an extension or renewal were deliberately left uncertain, requiring negotiation of new terms to create a binding agreement. (*Id*. at 19). Plaintiff contends that the phrase "under similar terms a like lease" supports the interpretation that a new lease was contemplated or intended. (*Id*. at 20).

Plaintiff maintains that the plain language of Paragraph 19 contemplates a new lease, not merely the extension of the same lease, because an expired lease cannot be extended. (*Id*. at 22). Because the contract requires the Leases to expire before Defendants' could exercise the option, the parties could not have intended the initial lease to continue under the same terms. Rather, Plaintiff insists, the parties contemplated a new and separate lease upon expiration of the primary term.

Plaintiff then offers several arguments in the alternative. First, Plaintiff contends that, even if Paragraph 19 gives Defendants an option either to extend the same lease or renew a similar lease, Defendants failed to exercise the purported option properly: because the Leases allowed for exercise of any such rights only *after* the original lease expired, the filing of the Notices with the Jefferson County Recorder's Office were "untimely and invalid." (Doc. 5, ¶¶ 42-44). In the next alternative, Plaintiff argues that Paragraph 19 is void for vagueness,

9

indefiniteness and/or uncertainty. (Doc. 38 at 27). In its final alternative, Plaintiff argues that any extension or renewal right Defendants claim violates the requirement under Ohio's Statute of Frauds, s*ee* Ohio Rev. Code Ann. Section 1335.04, that the essential terms of an agreement are expressed with certainty and clarity. (*Id*. at 28).

### 2.  Defendants' Interpretation of Paragraph 19 of the Leases

The primary argument Defendants' make is a plain language one. Defendants apply contract interpretation principles to the final sentence of Paragraph 19 to argue that the provision unambiguously gives them an option *either*: (1) to extend the original terms of the Lease; *or* (2) to renew a "like lease" under "similar terms." (Doc. 39).

Defendants' interpretation is based, in part, on the use of the disjunctive "or" in the final sentence of Paragraph 19. (*Id*. at 26). The use of "or," Defendants argue, indicates that the terms "extend" and "renew" have different meanings within the context of Paragraph 19; a contrary interpretation would mean that including both terms was redundant. (*Id*.). Thus, the only reasonable interpretation of Paragraph 19's plain language – that is, the interpretation that does not render words of the provision superfluous – is that Defendants had the option either to extend the lease under the same terms or to renew it under similar terms. (*Id*.).

Additionally, Defendants posit that Plaintiff's interpretation of Paragraph 19 is not reasonable because it is unreasonable to interpret "extend or renew" to just mean "renew." (*Id*.). Defendants also argue it is not reasonable to interpret Paragraph 19 as requiring Defendants to renegotiate an extension for two main reasons: first, the word "negotiate" is not in the provision; second, by definition, an "extension" prolongs existing terms, meaning there would be nothing to negotiate. (*Id*. at 28). Thus, according to Defendants, Paragraph 19 is not ambiguous because Plaintiff has not advanced a reasonable alternative interpretation. (*Id*. at 30).

In response to Plaintiff's first alternative argument, Defendants argue that the exercise of the option to extend was not untimely because the extension of the leases occurred "upon expiration," Defendants merely provided notice of intent to extend prior to the expiration. (*Id*. at 32-34). According to Defendants, premature notice of intent to extend the Leases does not invalidate the option to extend. (*Id*.).

### B. Intervening Sixth Circuit Opinion Interpreting Paragraph 19 of the Leases

On June 6, 2014, after the parties' cross-motions for summary judgment were filed, the Sixth Circuit reviewed a decision from the Southern District of Ohio interpreting the exact contract provision at issue here. *See Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356 (6th Cir. 2014), (Doc. 47). In *Eastham*, the essential facts are virtually identical: the parties disputed the proper interpretation of Paragraph 19 of the same oil and gas lease at issue in this case. 754 F.3d at 359. Like Plaintiff, the Easthams argued that Paragraph 19 gave Chesapeake the option to enter into a "like lease" with "similar terms," but not the same lease under identical terms. *Id*. The Sixth Circuit disagreed with the Eastham's interpretation and affirmed the District Court's decision, concluding that "the only reasonable construction of Paragraph 19 is…that [it] gives defendant two options: (1) to extend the lease on the same terms as the existing lease; or (2) to renegotiate for a 'renew[ed]' 'like lease' on 'similar terms.'" *Id*. at 363.

At least three other courts have reviewed Paragraph 19 and come to the same conclusion as the Sixth Circuit about its proper interpretation. *See Brown v. Chesapeake Appalachia, LLC*, 2013 U.S. Dist. LEXIS 118827 at *21 (N.D. W.V. Aug. 21, 2013) ("[T]he relevant sentence of Paragraph 19 unambiguously grants the defendant two alternative options, one, to extend the existing lease, and two, to renew a like lease under similar terms."); *Kenney v. Chesapeake Appalachia, L.L.C.*, Case No. 2013-cv-240, (Ohio Ct. App. Apr. 3, 2014) (holding that Paragraph

19 provides the Lessee with an option to extend each lease without negotiating new terms and that the option was validly exercised by the Lessee within the time period prescribed by the lease), (Doc. 45); *Bissett v. Chesapeake Appalachia, LLC*, 5:13-CV-20, 2014 WL 1689928 (N.D. W.Va. Apr. 29, 2014) ("The Court agrees with the defendants that the plain language of the second sentence of Paragraph 19 provides Chesapeake with the option to extend the terms of the existing Lease. The Plaintiffs' claim that Paragraph 19 is solely an anti-top leasing restriction lacks merit."), (Doc. 46).

In the case *sub judice*, even in light of additional arguments presented by Plaintiff that were not considered by the District Court or the Sixth Circuit in *Eastham*, this Court is bound by the Sixth Circuit's interpretation of Paragraph 19. For the following reasons, this Court concludes that the only reasonable construction of Paragraph 19 is to interpret it as providing Defendants two options: (1) to extend the lease on the same terms as the existing lease; or (2) to renew a "like lease" with "similar terms." *See Eastham*, 754 F.3d at 362-63. Plaintiff's additional arguments presented in this case are insufficient to create a genuine issue of material fact and to withstand summary judgment.

### C. Paragraph 19 is Unambiguous

This Court finds that the plain language of the Leases unambiguously grants Defendants an option *either* to renew or to extend the respective Leases. This interpretation is the only reasonable construction of Paragraph 19.

The weight of Plaintiff's ambiguity argument largely falls on its assertion that the terms "extend" and "renew" are synonymous. Under Ohio law, however, this is not the case. The Ohio Supreme Court has specifically held that options to extend and options to renew have distinct meanings and legal effects:

> [A] distinction must be made between contracts containing options to 'renew' for a given term or terms and those containing options to 'extend' for a given term. A contract containing an option to renew has the effect of granting a right to execute a *new* contract upon exercise of the option and the new contract is operative immediately after the terminal date of the original agreement.... On the other hand, a contract which may be characterized as one containing an option to extend an agreement constitutes a present grant which, upon exercise of the option, operates to extend the term of the original agreement and the contract then becomes one for both the original and the extended term.

*State ex rel. Preston v. Ferguson,* 166 N.E.2d 365, 371 (Ohio 1960).[3] In other words, an option to "extend" lengthens the existing agreement for a new period of time. Accordingly, when Defendants exercised their options to extend each of the respective Leases, it bound Plaintiff to same agreement, but for a new five-year period. *See Eastham*, 754 F.3d at 362.

Plaintiff relies in part on *Corvington v. Heppert,* 103 N.E.2d 558 (Ohio 1952), for the proposition that "extend" and "renew" have been used interchangeably under Ohio law. But *Corvington* did not create a bright-line rule regarding the meaning and use of the terms. To the contrary, as the Sixth Circuit noted, *Corvington* was a fact-specific decision where the court found that, under the contract language at issue, the terms "extend" and "renew" had the same legal effect—i.e., continuation of the lease. *Corvington*, 103 N.E.2d at 560; *see also Eastham*, 754 F.3d at 363 n.1. Even if *Corvington* had a broader holding, the Ohio Supreme Court

---

[3] At least one Ohio state trial court has analyzed contract language identical to Paragraph 19 and concluded that there is "no meaningful distinction between an option to extend and an option to renew" a lease. *Flannery, et al., v. Enervest Operating, LLC, et al.,* C.P. No. 12 CVH 27524 (Carroll Cnty. Common Pleas, April 14, 2014). This Court, however, is required to follow the Ohio Supreme Court's decision in *Ferguson.* Further, as noted by the Sixth Circuit, the rule from *Ferguson* has been reaffirmed by Ohio courts and by federal courts interpreting Ohio law. *See Eastham*, 754 F.3d at 362 (citing *Xenia v. State,* 140 Ohio App.3d 65, 746 N.E.2d 666, 673 (2000) ("Paragraph 12 set forth an option to extend, rather than an option to renew, the water contract. Therefore, under *Ferguson,* no new water contracts ever came into being, but the original water contract remained continuously in force through a series of successive one-year extensions."); *Estate of Kinsey v. Janes,* 82 Ohio App.3d 822, 613 N.E.2d 686, 689–90 (1992) (relying on *Ferguson* when holding that an option to renew created a series of new contracts); *Action Grp. Int'l, LLC v. AboutGolf, Ltd.,* 2011 WL 1627943 at *4 n. 1 (N.D.Ohio Apr. 29, 2011) (citing *Ferguson* while noting that Ohio law "distinguishes between renewal contracts and contract extensions")).

clarified in *Ferguson*, the more recent case, that options to extend and options to renew are legally distinct under Ohio law. *Ferguson,* 166 N.E.2d at 371.

Similarly, the words "extend" and "renew" have different definitions. The dictionary defines "extend" as "to increase the length or duration of; lengthen; prolong." Random House Webster's Unabridged Dictionary at 684 (Deluxe Ed.2001). "Renew" is defined as "to begin or take up again." *Id.* at 1631; s*ee also Campus Bus Serv. v. Zaino,* 786 N.E.2d 889, 891 (Ohio 2003) ("To determine the common, everyday meaning of a word, [the Ohio Supreme Court has] consistently used dictionary definitions."). The plain meaning of the word indicates that "extending" a lease would mean "increasing the…duration of" the same lease. A "renewal," on the other hand, would indicate a party is "begin[ning] or tak[ing] up again" a "like lease" with similar terms.

Furthermore, Plaintiff's claim that "extend" and "renew" have the same meaning within the context of Paragraph 19 "would produce a nonsensical result, as the contract would be redundant." *Eastham*, 754 F.3d at 363 (noting if the words "renew" and "extend" mean the same thing, then Paragraph 19 would give the lessee the option to "extend or extend under similar terms a like lease" or "renew or renew under similar terms a like lease."). Such a result would be contrary to Ohio law, which mandates that "a contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage." *Phillips Exploration*, 2012 WL 6594915 at *4 (quoting *Local Mktg. Corp. v. Prudential Ins. Co.*, 824 N.E.2d 122, 125 (Ohio Ct. App. 2004); *see also Farmers' Nat'l Bank v. Delaware Ins. Co*., 94 N.E. 834, 839 (Ohio 1911) ("The plain rule of construction requires that every provision of a contract shall be given effect if possible"); *Mead Corp. v. ABB Power Generation, Inc*., 319 F.3d 790, 797 (6th

14

Cir. 2003) ("[i]t is well settled that contracts must be read as a whole, and they must be interpreted in such a manner as to give effect to every provision.").

Interpreting Paragraph 19 consistent with *Ferguson* and the Leases's plain language also ensures that effect is given to the phrase "renew under similar terms a like lease." Because a party always has the option to attempt to renegotiate new contract terms, Plaintiff's interpretation of Paragraph 19 (that Paragraph 19 only provides Defendants the right to renegotiate a renewal of the lease) would reduce the phrase to surplusage. Instead, interpreting the plain meaning of the option provision as providing Defendants the right to bind Plaintiff to a new agreement under "similar terms" *or* to extend the original agreement for additional term gives effect to the entire provision in Paragraph 19. *See Eastham*, 754 F.3d at 363.

### 1. Evidence of Trade Custom and Usage

The Court rejects Plaintiff's arguments that evidence of trade custom and usage establishes that "extend" and "renew" have the same meaning within the oil and gas industry or, in the alternative, that the evidence of trade custom and usage renders the contract ambiguous. Generally, a court may turn to evidence of trade custom and usage to determine the proper interpretation of a contract only if the meaning of the contract is ambiguous. *See, e.g.*, *Eastham*, 754 F.3d at 364 ("Having concluded that the lease is unambiguous, we decline to address the Easthams' extrinsic evidence of the parties' intent."); *Anderson v. Van's Photo & Video Warehouse, Inc.*, 1998 WL 401166 (Ohio Ct. App. May 11, 1998) (generally, under Ohio law, "the court need not take parol evidence of general custom or trade usage where the contract is clear and unambiguous."); *White v. Bureau of Nat'l Salesmen's Associations.*, 1979 WL 210682 (Ohio Ct. App. Nov. 8, 1979) ("We concur with the trial court's finding that the contract was unambiguous and that consideration of custom and trade usage is therefore inappropriate."). In

general, expert testimony is considered extrinsic evidence under Ohio contract law. *See, e.g.*, *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App. 3d 75, 84, 680 N.E.2d 240, 245 (1996).

Plaintiff presents evidence that the terms "extend" and "renew" are used interchangeably in the oil and gas industry. Specifically, Plaintiff argues that, at his deposition, Defendants' expert witness Professor Bruce Kramer ("Kramer") was presented with "numerous examples of gas companies…utilizing the terms 'extend' and 'renew' interchangeably in oil and gas leases." (Doc. 38 at 19). Plaintiff claims that Kramer admitted that "the terms 'extend' and 'renew' were used interchangeably when dealing with options to renew or extend in said leases." (*Id.*)

Even if the Court may consider evidence of trade custom and usage where a contract is unambiguous, as Plaintiff suggests, such evidence would not change the outcome of this case. Kramer testified that, in the oil and gas industry, Paragraph 19 would be construed as conveying an option to either extend the current contract or renew under a similar lease. (*Kramer Dep.*, Doc. 38-1). While Kramer did acknowledge that some third-party contracts he examined appeared to use the terms "extend" and "renew" interchangeably, such an acknowledgement does not support a valid presumption that the parties have knowledge of the special usage and that they intended limited meanings when they employed the phrase "extend or renew under similar terms a like lease" in Paragraph 19. This is especially so where the third-party contracts Kramer was asked to review did not use the same language as Paragraph 19 or use both "extend" and "renew" with a disjunctive "or" in-between. (Doc. 38-1 at 19-22).

For these reasons, the Court rejects Plaintiff's arguments regarding the interpretation of Paragraph 19 and Plaintiff's ambiguity arguments. The plain language of Paragraph 19 is unambiguous. As such, Defendants' interpretation is the only reasonable interpretation of the

provision.  *See Potti*, 938 F.2d 641, 647 (6th Cir. 1991) ("Ambiguity exists … where contract language is susceptible to two or more reasonable interpretations"; "the determination [of] whether a contract is ambiguous is made as a matter of law by the court.") (citing *Wells v. American Elec. Power Co.*, 548 N.E.2d 995 (Ohio 1988)).

 Thus, Paragraph 19 gives Defendants the option either: (1) to extend the Leases on the same terms; or (2) to renew a like lease under similar terms.

### D.  *Extrinsic Evidence Regarding Range's Position on the Meaning of Paragraph 19*

This Court also declines to consider Plaintiff's extrinsic evidence regarding Range's lack of a position on the proper interpretation of Paragraph 19.  As previously stated, the admissibility of extrinsic evidence is contingent upon "some finding of contractual ambiguity."  *See, e.g.*, *Engineered Polymers Corp. v. Henry A. Selinsky, Inc.*, 2008 WL 2572585 (Ohio Ct. App. Stark Co. June 2, 2008); *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 812 (6th Cir. 2007).  Because the contract language at issue is unambiguous, the Court need not review extrinsic evidence, including the fact that third-party contract drafter Range indicated that it did not adopt a formal corporate position regarding the meaning of Paragraph 19. (Doc. 38 at 30).  Even if the Court relied on this evidence, the lack of a position by the contract drafter about the meaning of the provision at issue is insufficient to create a genuine issue of material fact capable of withstanding summary judgment.

### E.  *Vague, Uncertainty, Indefiniteness, and the Statute of Frauds*

Because this Court finds that the language of Paragraph 19 is unambiguous, the Court rejects Plaintiff's arguments that the provision is void for vagueness, indefiniteness, uncertainty, or that it violates the Statute of Frauds.  The plain meaning of the contract prevails.

### *F.  Defendants' Properly Exercised their Option to Extend the Leases*

Plaintiff next argues that, because Paragraph 19 specified that Chesapeake's option would only be effective "[u]pon expiration of this lease and within sixty days thereafter," Defendants were required to allow the original lease to expire before they could exercise the option. That is, Plaintiff claims that Defendants exercised their option prematurely because it executed and recorded its Notice of Extension approximately five days before the primary lease expired.  This Court disagrees.  Plaintiff has not cited any authority in which an option in a contract was invalidated because it was exercised early (as opposed to late or on time).  Neither was this Court able to locate any such case.  Further, as the Sixth Circuit noted in *Eastham*, because "extend" and "renew" have distinct meanings:

> construing the sixty-day provision of the lease as the [Plaintiff does] would effectively read the word 'extend' out of the contract.  Under the [Plaintiff's] interpretation…[Defendant] would *never* be able to exercise its option to extend the lease: if it exercised its option to extend the lease before the expiration of the original lease, it would be premature-if it waited until after the original lease's expiration, it would have waited too long.

*Eastham*, 754 F.3d at 364.  For this reason, this Court rejects Plaintiff's timeliness argument.

Even assuming that the sixty-day provision created a condition precedent to exercising the option, the condition's failure would not excuse Plaintiff from being bound by the Defendants' extension.  Generally, "[t]he nonoccurrence of a condition precedent excuses a party from performing the duty promised under the contract." *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.,* 196 Ohio App.3d 784, 965 N.E.2d 1007, 1013 (2011).  If, however, the condition is of only minor importance, its happening is a "mere technicality" and forfeiture will result from insisting on the occurrence, the nonoccurrence will be excused, and the failure of the condition's occurrence will not discharge the other party's duty of performance.  *See*

*Eastham*, 754 F.3d at 364; *see also* Williston on Contracts § 43:14 (4th ed.).  In this case, because the early filing of the Notices of Extension was nonmaterial, this Court will not release Plaintiff from the Leases on these grounds.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 38) is hereby **DENIED** and Defendants' Cross-Motion for Summary Judgment (Doc. 39) is hereby **GRANTED**.  This case is hereby dismissed.

    **IT IS SO ORDERED.**

                                                     /s/ Algenon L. Marbley
                                               **ALGENON L. MARBLEY**
                                               **UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2014**